IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HUGH WILLIAMS,  Plaintiff,  v.  JAIME SORBER, et al.,  Defendants. | CIVIL ACTION  NO. 23-3426-KSM |

MEMORANDUM

Marston, J.                                                                                            January 24, 2024

     *Pro se* Plaintiff Hugh Williams, a prisoner currently confined at SCI Phoenix, initiated this action in Pennsylvania state court alleging violations of his constitutional right to equal protection against Defendants Jaime Sorber, Superintendent of SCI Phoenix, and George Little, Secretary of the Department of Corrections, (together, "Defendants") in both their official and individual capacities. (Doc. No. 1.) On September 1, 2023, Defendants timely removed the case to this Court. (Doc. No. 1-1.) Before the Court is Defendants' motion to dismiss the Complaint. (Doc. No. 5.) Plaintiff opposes the motion. (Doc. No. 10.) For the reasons that follow, the motion to dismiss is granted without prejudice.

    **I.    BACKGROUND**

     Taking the allegations in the Complaint as true, the relevant facts are as follows.[1] Plaintiff Hugh Williams is an inmate at SCI Phoenix, where he resides on the lowest floor of his

---

[1] "The District Court, in deciding a motion under Fed. R. Civ. P. 12(b)(6), [i]s required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the Plaintiff]." *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

housing unit in Quad 2, H Block, Side B.[2]  (Doc. No. 1 at p. 3.)  Plaintiff alleges that on that floor, the shower facilities have shower stalls with "café" or "salon" style doors which prevent the viewing of inmate's private parts while keeping faces and chests visible.  (*Id.* at ¶ 6.)  Plaintiff alleges that due to the configuration of the shower stalls, inmates using those showers are subjected to "unwarranted, unnecessary eye contact" from inmates using nearby phones, passersby, and correctional officers who sit at a desk which directly faces the showers.  (*Id.*)  Conversely, Plaintiff alleges that inmates using the showers on the top floor of the housing unit face a blank wall and do not make eye contact with anyone due to the construction and configuration of the housing unit.[3] [4]  (*Id.* at ¶ 9.)  Plaintiff alleges that he may not use the showers on the top floor because inmates are permitted to use the showers only on the floor to which they are assigned.  (*Id.* at ¶ 8.)  He seeks an injunction ordering Defendants either to replace the bottom floor's existing shower doors with larger doors that prevent eye contact or install plastic opaque extensions on the existing doors that permit correctional officers to monitor showers and see showering inmates' silhouettes.  (*Id.* at p. 8.)

Plaintiff first pursued his complaints regarding the shower accommodations within the prison grievance system.  On April 27, 2022, Plaintiff filed an informal request addressed to the Prison Rape Elimination Act ("PREA") Coordinator asking whether the shower doors at SCI Phoenix were compliant with PREA standards and requesting that larger doors be placed on the

---

[2] Plaintiff alleges that SCI-Phoenix is a "prototypical male population maximum prison" with two sides, East and West and each side consists of four housing units/blocks, with two wings "A" and "B."  (*Id.* at ¶¶ 1-3.)

[3] Plaintiff asserts that each housing unit has "two tiers, with showers on the bottom and second tier, directly above and below on [sic] another."  (*Id.* at ¶ 4.)  According to Plaintiff, the "top tier has a railed catwalk which leads to and from the staircases and the showers."  (*Id.* at ¶ 9.)

[4] Plaintiff also alleges that transgender inmates are not subjected to "unwarranted" eye contact due to the configuration of the shower stalls because they are permitted to shower in "complete privacy out of the view of other inmates, where plaintiff does not."  (*Id.* at ¶ 19.)

2

Case 2:23-cv-03426-KSM   Document 11   Filed 01/24/24   Page 3 of 10

bottom floor showers to prevent eye contact. (*Id.* at ¶ 11; Doc. No. 5-1 at 2.) After following up on June 1, 2022, a PREA Coordinator issued a response on June 7, 2022 stating:

> [T]he shower doors are compliant with PREA standards. They prevent viewing of private body areas while permitting enough vision to ensure safe/secure monitoring . . . .[S]taff have a need to make a quick visual inspection to prevent suicide attempts, more than one person in a shower, etc.

(Doc. No. 5-1 at 1.)

On June 15, 2022, Plaintiff filed a formal grievance relaying his concerns about the inadequate "salon doors" which allow "unwarranted, unnecessary" eye contact. (Doc. No. 2 at 13.) On July 11, 2022, the Facility Grievance Officer responded to Plaintiff's grievance:

> The shower doors utilized at SCI Phoenix are compliant with PREA standards which are based on concealing private body parts. The doors in use at SCI Phoenix permit staff to visually confirm that no safety or security problems exist while preserving necessary privacy (concealing an inmate's private body parts). Occasional, brief eye contact is not considered a PREA issue nor inappropriate for staff engaging in their duties. Given this review, your grievance and requested relief are denied.

(*Id.* at 15.)

Plaintiff appealed the denial of his formal grievance on July 25, 2022 (Doc. No. 5-2) and alleges that Defendant Sorber upheld the denial on August 3, 2022 (Doc. No. 2 at 17; Doc. No. 1 at ¶ 14). Plaintiff appealed Sorber's decision to the Office of Inmate Grievances and Appeals for the Secretary of the Department of Corrections (Doc. No. 1 at ¶ 15), but alleges that the Chief Grievance Counselor at the Secretary's Office, "'i.e. Defendant Little' . . . upheld the responses below and denied [Plaintiff's] requested relief [on] September 28, 2022." (*Id.*; Doc. No. 2 at 19.) Finally, on October 9, 2022, Plaintiff filed an application for reconsideration arguing that the responses to his grievances "did not address his major concern," but he never received a response. (Doc. No. 1 at ¶ 16.)

3

When these attempts to pursue his complaints through the prison grievance system failed, Plaintiff brought this suit naming Defendants Sorber and Little in their individual and official capacities based on their roles in upholding the denial of his grievances. (Doc. No. 1.) Plaintiff does not "claim being part of a suspect class" (Doc. No. 10 at 5), but instead argues that the configuration of the shower doors in his housing unit violates the Fourteenth Amendment Equal Protection Clause of the United States Constitution and Section 28 of the Pennsylvania State Constitution because (1) the inmates on the top floor of his housing unit in SCI Phoenix are not subjected to the same "unwarranted, unnecessary" eye contact Plaintiff endures while showering, and (2) transgender and intersex inmates are permitted to shower apart from the rest of the inmate population, again without being subjected to "unwarranted, unnecessary" eye contact while showering. (Doc. No. 1 at ¶¶ 19–21.)

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement.'" *Id.* Factual allegations must be "enough to raise a right to relief above the speculative level," and a "complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

That said, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Bell Atl. Corp.*, 550 U.S. at 555 (explaining that the Plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action"). It is the Defendants' burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

Because Plaintiff is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 703 F.3d 239, 244–45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala*, 704 F.3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).

### III. DISCUSSION

Plaintiff alleges violations of his civil rights pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. To state a claim under § 1983, a plaintiff must plead a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law. *Phillips*, 515 F.3d at 235 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996)). Section 1983 does not create substantive rights; rather, it provides a cause of action by which to remedy violations of federal law committed by government officials. *Kneipp*, 95 F.3d at 1204 (citing *Baker v. McCollan*, 443

U.S. 137, 144 n.3 (1979)). The Court addresses Plaintiff's federal constitutional claim below before turning to Plaintiff's Pennsylvania state constitutional claim.

### A. United States Constitution Equal Protection Clause[5]

Plaintiff alleges the configuration of the shower doors on the bottom floor of his housing unit violates the Equal Protection Clause because (1) the use of "salon" style shower doors with the construction and configuration of the bottom tier showers subject him to "unnecessary and unwarranted" eye contact, while inmates housed on the top floor are not subjected to the same conditions and (2) transgender and intersex inmates are permitted to shower separately from other inmates and are thus not subjected to the same "unnecessary and unwarranted" eye contact as bottom floor inmates. (Doc. No. 1 at ¶¶ 19–21.) Plaintiff argues this constitutes unconstitutional discrimination. Defendants respond that there is no constitutional violation because Plaintiff fails to identify similarly situated inmates residing in the bottom floor who were treated differently. (Doc. No. 5 at 11.) Defendants also argue that there is a rational basis for both the structure of the shower doors and the prison's policy permitting transgender and intersex inmates to shower separately from other inmates. (*Id.*)

Under the Equal Protection Clause of the Fourteenth Amendment, all individuals similarly circumstanced must be treated alike. *Plyer v. Doe*, 457 U.S. 202, 216 (1982) (citing *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)). A plaintiff may advance an equal protection claim under two theories, the traditional theory and a class-of-one theory. *Patterson v. Strippoli*, 639 F. App'x 137, 142 (3d Cir. 2016). Under the traditional theory, an individual is protected against discriminatory treatment based on membership in a protected class. *Id.* Under the class-of-one theory, an individual can assert an equal protection violation

---

[5] Because the Court finds Plaintiff fails to allege a constitutional violation, the analysis is the same as to both the individual and official capacity claims.

without protected class status by alleging "irrational and intentional different treatment in comparison to similarly situated individuals." *Judge*, 135 F. Supp. 3d at 297. Because Plaintiff does not allege protected class status (*see* Doc. No. 10 at 5 ("Plaintiff does not claim being a part of a suspect class")), the Court considers his allegations under the "class of one" theory. To state a claim under a class-of-one theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Because the Court finds that Plaintiff fails to allege enough facts to demonstrate that he is treated differently from others similarly situated, the Court need not address the remaining two prongs of the Equal Protection Clause class-of-one analysis.[6] "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Conversely, "[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause." *Thomas v. Duvall*, 2017 WL 9532987, at *9 (M.D. Pa. Mar. 1, 2017) (citing *E&T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987)). For example, two groups of inmates would not be similarly situated if they were under the supervision of different prison officials in different buildings, even if the prisons are "on the same campus, and share some resources." *Id.* at *10 (citing *Goolsby v. Carrasco*, No. 1:09-CV-01650-DLB

---

[6] Nevertheless, the Court notes that although Defendants provide a rational basis for the configuration of the shower doors, (*see* Doc. No. 5-1 at 1 (direct monitoring of the showers by correctional officers required to "make a quick visual inspection to prevent suicide attempts, more than one person in a shower, etc.")), Defendants fail to demonstrate the "rational basis for the *difference in treatment*" between first and second-floor inmates. *Hill*, 455 F.3d at 239 (emphasis added). For example, it's not clear to the Court whether the second floor has the same salon-style shower doors or if the inmates are monitored in the same manner as the first-floor inmates.

PC., 2010 WL 95246, at *3 (E.D. Cal. Jan. 6, 2010)). Similarly, protective custody inmates are not similarly situated to general population inmates. *Livering v. Karnes*, No. 1:20-CV-855, 2021 WL 308953, at *3 (M.D. Pa. Jan. 29, 2021) (citing *Allgood v. Morris*, 724 F.2d 1098 (4th Cir. 1984)). Here, Plaintiff alleges that unlike first-floor inmates, the second-floor inmates do not have to make eye contact with anyone while showering "due to the housing unit construction and configuration." (Doc. No. 1 at ¶¶ 4–9.) However, Plaintiff does not allege sufficient facts from which the Court can infer that the inmates on the second floor are similarly situated to the inmates on his floor, such as facts demonstrating that all inmates have the same inmate classification, privileges, restrictions, etc. As a result, the Court is unable to determine if the inmates on both floors are similarly situated, and Plaintiff's complaint must be dismissed without prejudice. *See Victory v. Berks County*, 355 F. Supp. 3d 239, 250 (E.D. Pa. 2019) (noting that the similarly situated analysis is a fact-intensive inquiry (citing *Yates v. Stalder*, 217 F.3d 332, 334–35 (5th Cir. 2000)).

Because Plaintiff fails to allege facts from which the Court can infer that he is similarly situated with the second floor inmates, Plaintiff's claims against Defendants in both their individual and official capacities are dismissed without prejudice.

### B. Pennsylvania State Constitution Claims

Plaintiff's claims under the Pennsylvania Constitution are also dismissed.[7] Plaintiff argues that Defendants' practices violate Article I, § 28 of the Pennsylvania Constitution. (Doc.

---

[7] This Court has supplemental jurisdiction to consider this state law claim under 28 U.S.C. § 1367, which states, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See also Lyon v. Whisman*, 45 F.3d 758, 759–62 (3d Cir. 1995) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)) (describing requirements for supplemental jurisdiction, including (1) the federal claim must have substance sufficient to confer subject matter jurisdiction on the court; (2) the state and federal claims must derive from a common nucleus of operative

No. 1 at ¶ 20; Doc. No. 10 at 7.)  Article I, § 28 of the Pennsylvania Constitution, otherwise known as the Equal Rights Amendment, provides: "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual." Since Plaintiff does not allege discrimination on the basis of sex and disavows membership in a protected class (Doc. No. 10 at 5), the Court finds that this provision of the Pennsylvania Constitution is inapplicable.[8]

Here, because the Court construes Plaintiff's *pro se* complaint liberally, *Vogt*, 8 F.4th at 185, the Court examines Plaintiff's claims as an assertion of his equal protection claim under Article I, Section 26 of the Pennsylvania Constitution, otherwise known as Pennsylvania's equal protection provision. *Montanye v. Wissahickon Sch. Dist.*, 327 F. Supp. 2d 510, 524 (E.D. Pa. 2004); Article I, § 26 of the Pennsylvania Constitution ("Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.").  Section 26 is "analyzed under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment." *Id.* (quoting *Small v. Horn*, 722 A.2d 664, 672 n.13 (Pa. 1988) and *Kaehly v. City of Pittsburgh*, 988 F. Supp. 888, 893 n.5 (W.D. Pa.

---

facts; and (3) "But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole").  Here, Plaintiff's constitutional equal protection claim clearly falls under this Court's subject matter jurisdiction and his state constitutional claims are "merely alternative theories of recovery based on the same facts." *Id.* at 761 (citing *Lentino v. Fringe Emp. Plans, Inc.*, 611 F.2d 474, 479 (3d Cir. 1979)).

[8] Although Plaintiff argues that Section 28 applies because he faces discrimination as a non-transgender inmate (Doc. No. 10 at 7, *see supra* n.4), the Court is not aware of any case indicating that Article I, Section 28 has been interpreted as protecting against discrimination on the basis of gender identity.  *See also Wise v. Com., Dep't of Corrs.*, 690 A.2d 846, 848 (Pa. Commw. 1997) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987)) (holding that the standard under Article I, Section 28 "does not apply to the same degree to a prisoner.  A prisoner, by the very fact of his or her conviction or incarceration, has diminished civil rights").

1997)).  As discussed above, Plaintiff has not alleged sufficient facts to state a claim for a Fourteenth Amendment constitutional violation. *See supra*.  Thus, to the extent that Plaintiff asserts an equal protection claim under the Pennsylvania Constitution, the Court finds these claims must also be dismissed without prejudice for the same reason set forth above.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is granted without prejudice.  Any amended complaint must clearly indicate the relevant protective status, privileges, and/or restrictions applicable to the inmates on both the first and second floor of Plaintiff's housing unit.  An appropriate order follows.